IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ARNOLD K. RICHARDS and
MARY L. RICHARDS,

                **Plaintiffs,**

v.                           **CIVIL ACTION NO. 1:17CV50**
                                    **(Judge Keeley)**

EQT PRODUCTION COMPANY,

                **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT
OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART
AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST
[DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR
STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

This case involves a breach of contract claim related to royalty payments for natural gas interests. The plaintiffs, Arnold and Mary Richards ("the Richardses"), are owners of mineral interests in Ritchie County, West Virginia. In their complaint, the Richardses alleged that the defendant, EQT Production Company ("EQT Production"), had breached the express terms of the relevant oil and natural gas leases by improperly calculating royalties and making improper deductions, including wrongful deductions for severance taxes. EQT Production denied these allegations, contending that its royalty payments to the Richardses were in compliance with the lease terms and West Virginia law. Following the Court's denial of EQT Production's motion for summary judgment, the case proceeded to trial by jury.

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

At trial, and after the Richardses' case-in-chief, EQT Production moved for a directed verdict in its favor as to whether the Richards had met their burden to establish the market price of the natural gas at the relevant valuation point and to establish that EQT Production had breached the relevant lease terms by failing to pay royalties based on the market value of the gas (Dkt. No. 123). Viewing the evidence in the light most favorable to the Richardses, and finding that the jury would have a legally sufficient evidentiary basis to find in the Richardses' favor on their breach of contract claim, the Court denied EQT Production's motion for a directed verdict (Dkt. No. 124). At the close of all the evidence, EQT Production renewed its motion for a directed verdict on the Richardses' breach of contract claim on the same grounds (Dkt. No. 125), which the Court denied (Dkt. No. 126).

Also at the close of the evidence, the Richardses moved for a directed verdict in their favor as to whether EQT Production had impermissibly deducted severance taxes from the their royalties under the relevant lease terms. Following the argument of the parties, and after careful consideration, the Court granted the

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

Richardses' motion for a directed verdict as to the apportionment of severance taxes and ordered that they be awarded $42,540.83 (Dkt. Nos. 127; 128).

The jury subsequently returned a verdict in favor of the Richardses on their breach of contract claim, answering "Yes" to the question of whether EQT Production had "breached the terms of the Leases by failing to pay the Richardses the full amount of royalties due" and awarding them damages in the amount of $191,998.61 (Dkt. No. 134). Thereafter, the Court entered judgment orders in favor of the Richardses on the directed verdict and the jury's verdict (Dkt. Nos. 137; 138).

Now pending is EQT Production's Motion for Judgment as a Matter of Law, For New Trial, and For Amendment of the Court's Judgment Orders (Dkt. No. 149). EQT Production moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 and 60, or for a new trial pursuant to Fed. R. Civ. P. 59, on the Richardses' breach of contract claim. It also requests a new trial under Rules 59 and 60 on the issue of EQT Production's apportionment of severance taxes to the Richardses. Id. at 1. Also pending is the Richardses'

3

RICHARDS, ET UX., v. EQT PROD. CO.                                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

motion for prejudgment interest on both verdicts (Dkt. No. 147). The motions are fully briefed and ripe for decision.

### I. RELEVANT FACTS IN EVIDENCE[1]

The Richardses are owners of mineral interests in Ritchie County, West Virginia, and are lessors to the oil and gas leases at issue (collectively, "the Leases") (Dkt. No. 110 at ¶ 3). EQT Production, the sole lessee to the Leases, has the right to develop and produce natural gas from the leasehold estates. Id. at ¶ 2. Since at least the early 1950s, various lessees, including EQT Production, have produced natural gas from several vertical wells located on the Lease premises.

The Leases include the following royalty provision:

In Consideration of the Premises the said party of the second part, covenants and agrees: 1st-to deliver to the credit of the Lessors, their heirs or assigns, free of cost, in the pipe line to which the Lessee may connect the wells ... the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and second, *to pay ... one-eighth (1/8) of the* ~~value at the well~~ *market price of the gas from each and every gas well drilled on said premises, the product from which is*

---

[1] Many of the facts in this case were not in dispute, and the Court limits its recitation of the facts to those relevant to EQT Production's motion.

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

> *marketed and* ~~used~~ *sold off the premises, said gas to be measured* ~~at~~ *by a meter* ~~set on the farm~~.

Dkt. Nos. 51-1; 51-2; 51-3 (strikeout in original) (emphasis added) (the "Royalty Provision"). Since 1954, pursuant to the Royalty Provision, the Richardses have received a one-eighth royalty for natural gas produced from the vertical wells on the Lease premises. And, although the Leases were amended in 2014 to allow for pooling and unitization for horizontal drilling, the Royalty Provisions have not been modified. See Dkt. No. 110 at ¶ 4.

Pursuant to the amendments, in late 2016, EQT Production drilled six (6) horizontal wells on "Pullman 96," a well pad located on a tract adjacent to the Lease premises. Id. at ¶ 8. These wells produce natural gas from the leasehold estates, which EQT Production sells to an affiliate, EQT Energy, LLC ("EQT Energy").[2] Natural gas produced from the pooled acreage passes through meters located at or near the wellheads where, pursuant to a Base Contract for Sale and Purchase of Natural Gas ("Gas Sales

---

[2] EQT Energy is not a party to this action. Rather, the Richardses elected to bring their breach of contract claim only against EQT Production.

5

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

Contract"), EQT Energy takes custody of the gas. Id. at ¶¶ 7, 9. EQT Energy then delivers and sells the gas to third-party purchasers on the open market.

Notably, the Gas Sales Contract establishes a pricing formula whereby EQT Energy pays EQT Production an amount equal to the first of the month "index price" applicable to the interstate pipeline system into which the gas is delivered, less gathering and compression related charges. The interstate pipeline into which gas from the Lease premises is delivered is the Texas Eastern Transmission ("TETCO") M2 interstate pipeline system. Id. at ¶ 6. The index price applicable to the TETCO M2 system is not determined by EQT Production or any other EQT entity. Rather, the TETCO M2 index price is a published market price, which reflects the value of natural gas sold in the relevant geographical region.

To arrive at the price for the point where the gas is sold to EQT Energy (i.e., at or near the wellheads), EQT Production utilizes a "net-back" or "work-back" method, whereby certain post-production expenses of gathering and compressing the gas to the downstream interstate pipeline market at TETCO M2 are deducted from

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

the downstream TETCO M2 index price on a per unit basis. The Richardses' royalty payments are then calculated based on the price where the gas is sold to EQT Energy - at or near the wellhead.

The post-production expenses deducted from the TETCO M2 index price are reflected as "owner deducts" in the monthly remittance statements provided to the Richardses. The remittance statements also reflect that EQT Production allocates to the Richardses a one-eighth share of privilege taxes owed to the State of West Virginia for engaging in the business of severing natural gas for sale.

## II. STANDARDS OF REVIEW

### A.   Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) permits a trial court to "direct the entry of judgment as a matter of law" upon post-trial renewal of a motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate when, "without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." U.S. ex rel. DRC, Inc. v. Custer Battles, LLC, 562 F.3d 295, 305 (4th Cir. 2009) (citation omitted). The movant is entitled to judgment

7

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT
OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART
AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST
[DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR
STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

pursuant to Rule 50(b) "if the nonmoving party failed to make a
showing on an essential element of his case with respect to which
he had the burden of proof." Russell v. Absolute Collection Servs.,
Inc., 763 F.3d 385, 392 (4th Cir. 2014) (citation omitted). The
Court reviews "the evidence in the light most favorable to the
nonmoving party" in making this determination. Myrick v. Prime Ins.
Syndicate, Inc., 395 F.3d 485, 490 (4th Cir. 2005).

B.   **Motion to Alter or Amend Judgment**

     The Federal Rules of Civil Procedure allow a litigant subject
to an adverse judgment to file either a motion to alter or amend
the judgment pursuant to Rule 59(e), or a motion seeking relief
from the judgment pursuant to Rule 60(b). Although the two rules
appear similar, they are in fact quite distinct. A Rule 59(e)
motion is discretionary. It need not be granted unless the district
court finds that there has been an intervening change of
controlling law, that new evidence has become available, or that
there is a need to correct a clear error or prevent manifest
injustice. Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191,
197 (4th Cir. 2006). By contrast, Rule 60(b) provides that a court

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

may relieve a party from an adverse judgment if the party shows "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

C.    **Motion for New Trial**

Following a jury trial, Federal Rule of Civil Procedure 59(a) allows the court to grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice." EEOC v. Consol Energy, Inc., 860 F.3d 131, 145 (4th Cir. 2017), cert. denied, 138 S.Ct. 976 (2018). When ruling on a Rule 59 motion for a new trial on the basis of the weight of the evidence, "a trial judge may weigh the evidence and consider the credibility of witnesses[.]" King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010) (internal quotation marks omitted).

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

## III. DISCUSSION

### A.   Breach of Contract Claim

Pursuant to Rule 50(b), EQT Production renews its motion for judgment as a matter of law on the Richardses' breach of contract claim (Dkt. No. 149 at 1). It argues that the Richardses failed to make a showing on an essential element of their claim for which they had the burden of proof at trial, and that the jury's findings are not supported by substantial evidence (Dkt. No. 150 at 1). In the alternative, pursuant to Rule 59(e), EQT Production moves to alter or amend the judgment in order to correct clear error (Dkt. Nos. 149 at 1; 150 at 14).

In order to prevail on their breach of contract claim, the Richardses had the burden at trial to establish the following four elements: "the existence of a valid, enforceable contract; that [they] ha[d] performed under the contract; that [EQT Production] ha[d] breached or violated its duties or obligations under the contract; and that [they] ha[d] been injured as a result." Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc., 681 F.Supp.2d 694, 714 (S.D. W. Va. 2009) (citation omitted). The parties did not

10

RICHARDS, ET UX., v. EQT PROD. CO.                               1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT
OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART
AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST
[DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR
STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

dispute that the Leases comprise valid, enforceable contracts, or

that the Richardses had complied with the Lease terms. At issue was

whether EQT Production had breached its duty to pay proper

royalties to the Richardses under the relevant Lease provision.

As noted earlier, the Royalty Provision requires EQT

Production to pay the Richardses

> one-eighth (1/8) of the ~~value at the well~~ market price of
> the gas from each and every gas well drilled on said
> premises, the product from which is marketed and ~~used~~
> sold off the premises, said gas to be measured ~~at~~ by a
> meter ~~set on the farm~~.

(Dkt. Nos. 51-1; 51-2; 51-3) (strikeout in original). Taken alone,

the unambiguous language of the Royalty Provision precludes a

genuine dispute that the Leases obligate EQT Production to remit

royalties to the Richardses based on the "market price" of the

natural gas produced from the Lease premises. EQT Production

contends, however, that the Richardses presented insufficient

evidence for a jury to properly conclude that it had breached its

duty to remit one-eighth of the "market price" of the gas (Dkt. No.

150 at 14-19). The Court disagrees.

11

RICHARDS, ET UX., v. EQT PROD. CO.                      1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

At trial, the parties stipulated that EQT Production had "recently drilled horizontal Marcellus Shale wells on the Pullman 96 pad . . . pursuant, in part, to the [L]eases and modifications." (Dkt. No. 110 at ¶ 8). Trial testimony established that the horizontal wells had begun producing natural gas from the leasehold estates by November of 2016 (Dkt. No. 142 at 108:23-109:3). During their case-in-chief, the Richardses testified that they received their first royalty payment for gas produced from the horizontal wells in January of 2017. Id. at 69:21-23. They further testified that, since January 2017, EQT Production had "deducted" certain post-production expenses from their monthly royalties on the gas produced from the horizontal wells. Id. at 54:16-55:9; 66:2-9; 68:20-24; 70:17-20. Coupled with this testimony, the Richardses introduced monthly remittance statements provided by EQT Production, which reflected "owner deducts" for post-production expenses. See Joint Exs. 10; 11.

The Richardses further testified that, since 1954, they have received royalty payments for natural gas produced from the older vertical wells on the Lease premises (Dkt. No. 142 at 53:5-9;

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

54:12-15; 62:13-24). Between 1954 and 2016, neither EQT Production nor any other lessee-producer had taken any deductions from the Richardses' royalty payments for natural gas produced under the Leases. Id. at 54:8-22, 62:13-63:10. And, although the Leases were amended in 2014 to allow for horizontal drilling, the Royalty Provisions were not--and have never been--modified (Dkt. No. 110 at ¶ 4). See also Dkt. No. 142 at 64:18-25, 65:9-16. Mary Richards further testified that, as of the date of the trial, EQT Production had still never deducted any post-production expenses for gas produced from the vertical wells (Dkt. No. 142 at 68:25-69:2).

At trial, EQT Production did not dispute that, in order to determine the price of the gas where it is sold to EQT Energy, a net-back method is used to deduct certain post-production expenses of gathering and compressing the gas from the horizontal wells to the downstream market at TETCO M2. During its case-in-chief, EQT Production introduced the testimony of its Chief Accounting Officer, Jimmi Sue Smith ("Smith"), who confirmed that the "owner deducts" on the Richardses' monthly remittance statements reflect the post-production expenses deducted from the TETCO M2 index price

13

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

to determine a "fair market price at the wellhead" for gas produced from the horizontal wells. Id. at 109:21-111:8-24; 113:4-13. Smith further testified that EQT Production pays severance taxes to the State of West Virginia based on the value of the gas severed from the Richardses' property. Since January 2017, EQT has "charged" a portion of the severance taxes owed to the State for gas severed from both the vertical and horizontal wells as "a deduction on the [Richardses' remittance] statement[s]." Id. at 113:17-114:7.

When the evidence at trial is viewed in the light most favorable to the Richardses and all reasonable inferences are drawn in their favor, the Court concludes that a jury could have properly come to the conclusions reached by this jury,(1) that the net-back method utilized by EQT Production does not provide for the "market price" of the gas, and (2) that EQT Production had therefore "breached the terms of the Leases by failing to pay the Richardses the full amount of royalties due" under the Royalty Provision (Dkt. No. 134). Accordingly, EQT Production is not entitled to judgment as a matter of law or an altered or amended judgment on the Richardses' breach of contract claim.

14

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

## B.   Apportionment of Severance Taxes

Pursuant to Rule 59(e), EQT Production also moves the Court to alter or amend its judgment in favor of the Richardses on the issue of the apportionment of severance taxes, and to grant EQT Production a new trial on this issue (Dkt. No. 149 at 1). It argues that, by directing a verdict in favor of the Richardses, the Court was clearly erroneous in failing to permit the jury to consider whether EQT Production had breached the Royalty Provision by "allocating to the Richardses their share of severance taxes." Id.

At as mentioned earlier, Smith testified on cross-examination that EQT Production pays severance taxes to the State of West Virginia for the privilege of severing natural gas in this state, and that a portion of the severance taxes owed to the State are "charged" to the Richardses as "a deduction on the[ir remittance] statement[s]" (Dkt. No. 142 at 113:17-114:7). According to Smith, "EQT's policy is that the severance taxes are deducted unless it is specifically prohibited by the lease." Id. at 172:23-25. At the close of all the evidence, the Court ruled that EQT Production's allocation of severance taxes to the Richardses is impermissible,

15

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

as a matter of law, under West Virginia's Severance and Business Privilege Tax Act of 1993, W. Va. Code § 11-13A-1, <u>et seq.</u> ("Severance Tax Act" or "the Act").

> The Severance Tax Act provides, in relevant part,
>
> (a) Imposition of tax. -- **For the privilege of engaging or continuing within this state in the business of severing natural gas** or oil for sale, profit or commercial use, there is hereby levied and **shall be collected from every person exercising such privilege** an annual privilege tax: . . . .
>
> (c) Tax in addition to other taxes. -- The tax imposed by this section **shall apply to all persons severing gas** or oil **in this state**, and shall be in addition to all other taxes imposed by law.

W. Va. Code § 11-13A-3a (emphasis added). The Act defines "[p]erson" to include "any individual, firm, partnership, mining partnership, joint venture, association, corporation, trust or other entity, or any other group or combination acting as a unit." <u>Id.</u> § 11-13A-2(c)(9). It further defines "[b]usiness" to include "all activities engaged in, or caused to be engaged in, with the object of gain or economic benefit, direct or indirect," and "severing" as "the physical removal of the natural resources from

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

the earth . . . of this state by any means." Id. § 11-13A-2(c)(2) and (11).

Although the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") has not yet addressed the issue of whether natural gas lessees, such as EQT Production, may allocate severance taxes to royalty owners likes the Richardses, this Court holds that the Act unambiguously applies only to "persons severing gas . . . in this state." W. Va. Code § 11-13A-3a(c). By its plain language, the Severance Tax Act is limited to those individuals and entities exercising "the privilege of engaging . . . in the business of severing natural gas . . . for sale." Id. § 11-13A-3a(a); see also Cather, et al., v. EQT Prod. Co., et al., No. 1:17-CV-208, 2019 WL 3806629, at *4 (N.D. W. Va. Aug. 13, 2019) (Kleeh, J.) (holding that the Act "clearly limits its own applicability to those engaged in the business of severing, in this instance, natural gas from West Virginia lands. The applicability of the tax is limited to those exercising the privilege of extracting natural gas from property.").

17

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

Here, EQT Production does not dispute that it is engaged in the business of severing and producing natural gas in West Virginia for sale or profit, or that it has the responsibility to remit severance tax to the State of West Virginia based on the value of the gas produced (Dkt. No. 150 at 23). To the extent that EQT Production argues that the Richardses, as royalty owners, are also engaged in the business of "severing gas . . in this state," this argument is unavailing. As noted by the Richardses, EQT Production retains the exclusive right under the Leases to extract natural gas from the leasehold premises, <u>see</u> Dkt. Nos. 51-1; 51-2; 51-3, and the testimony of the parties at trial confirmed that Arnold and Mary Richardses are not engaged in the business of physically removing (<u>i.e.</u>, severing) natural resources from the State of West Virginia.

Based on the clear and unambiguous language of the Severance Tax Act and its application to the Leases, which are devoid of any language addressing severance taxes, the Court concludes that it was not clearly erroneous in directing a verdict in favor of the Richardses on the apportionment of severance taxes (Dkt. No. 149 at

18

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

1). Accordingly, EQT Production is not entitled to an altered or amended judgment or a new trial on the issue.

**C.  Prejudgment Interest**

Also pending is the Richardses' motion for prejudgment interest on the jury's verdict and the directed verdict by the Court (Dkt. No. 147), which EQT Production has opposed (Dkt. No. 148). Despite the opportunity to do so, the Richardses did not file a reply in support of their motion.

As argued by EQT Production, West Virginia Code § 56-6-27, rather than West Virginia Code § 56-6-31, provides for prejudgment interest in actions founded on contract. In that regard, the Supreme Court of Appeals of West Virginia has previously held that

> [i]n an action founded on contract, a claimant is entitled to have the jury instructed that interest may be allowed on the principal due, W. Va. Code, 56-6-27 [1923], but is not entitled to the mandatory award of interest contemplated by W. Va. Code, 56-6-31 [1981], since this statute does not apply where the rule concerning interest is otherwise provided by law.

Ringer v. John, 742 S.E.2d 103, 106-07 (W. Va. 2013) (quoting Syl. Pt. 4, Thompson v. Stuckey, 300 S.E.2d 295 (W. Va. 1983)). West Virginia Code § 56-6-27, in turn, provides that,

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

> [t]he jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict.

In City Nat'l Bank of Charleston v. Wells, 384 S.E.2d 374 (W. Va. 1989), the Supreme Court of Appeals again recognized that, "in contract claims, the right to prejudgment interest is dependent on the provisions of W. Va. Code, 56-6-27 (1923), which leaves the determination to the jury." Id. at 389 (quoting Syl. pt. 4, Stuckey, 300 S.E.2d at 295). Finding that the plaintiff had waived any right that he may have had to an award of prejudgment interest on his breach of contract claim, the court affirmed the circuit court's denial of his post-trial motion for prejudgment interest. In so doing, the court explained, in relevant part:

> Thus, the plaintiff here is not entitled to an award of prejudgment interest after trial, although he could have demanded an instruction to that effect in order to submit the issue to the jury. His failure to do so must be deemed a waiver of that right.

Id. (citations omitted); see also Rice v. Cmty. Health Ass'n, 40 F. Supp. 2d 788, 800 (S.D. W. Va. 1999), aff'd in part, vacated in

20

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

part, 203 F.3d 283 (4th Cir. 2000) (denying plaintiff's motion to amend the court's judgment order to include prejudgment interest where the plaintiff had "waived the right to a jury instruction on prejudgment interest by failing to request the appropriate jury instruction").

Here, as in Wells and Rice, the Richardses did not submit a proposed jury instruction regarding prejudgment interest. See Dkt. No. 59. Nor did they request one during the charge conference. Thus, they have waived the right to any prejudgment interest on the jury's verdict. See Wells, 384 S.E.2d at 389; Rice, 40 F.Supp.2d at 800.

On the other hand, as the finder of fact in granting the Richardses' motion for a directed verdict on the issue of severance taxes, and as EQT Production concedes in its briefing, the Court has the discretion to award prejudgment interest on the directed verdict. See, e.g., Velasquez v. Roohollahi, No. 13-1245, 2014 WL 5546140 at *3 (W. Va. Nov. 3, 2014) (recognizing that the circuit court, as the factfinder in a bench trial on a breach of contract claim, had the authority to decide whether to award prejudgment

21

RICHARDS, ET UX., v. EQT PROD. CO.                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

interest). In this case, the Court finds that the equities weigh in favor of awarding prejudgment interest to the Richardses for the delay in recovering damages.

Notably, West Virginia Code § 56-6-27 does not describe how prejudgment interest should be calculated. Federal courts have discretion in choosing the rate of prejudgment interest, which "will compensate [the prevailing party] for the delay in recovering damages when consideration is given to . . . the money market at the time," even where the underlying claim is based on state law. Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 186 F.2d 30, 35 (4th Cir. 1950); accord Liberty Mut. Ins. Co. v. Year Round Pool, Inc., 104 F.3d 359 at 4 (4th Cir. 1996) (unpublished); Montgomery Ward & Co. v. Collins Estate, Inc., 268 F.2d 830, 839 (4th Cir. 1959). Further, this Court has previously observed that, "in order to make the injured parties whole, the prejudgment interest should reflect the injured party's borrowing costs." Dijkstra v. Carenbauer, No. 5:11-CV-152, 2015 WL 12750449, at *7 (N.D. W. Va. July 29, 2015) (Bailey, J.) (quoting Zerkel v. Trinity Resources, Inc., 2013 WL 3187077, *2 (N.D. W. Va. June 20, 2013) (Stamp, J)).

22

RICHARDS, ET UX., v. EQT PROD. CO.                                    1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST [DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

Applying these principles, the rate at which prejudgment interest is calculated should reflect the rate that best represents the injured party's borrowing cost during the period of the loss of use of the moneys owed. In order to make this determination, and as suggested by EQT Production, the Court will apply the average federal interest rate from January 2017 to September 2018. During that time, the federal interest rates for marketable interest-bearing debt averaged 2.15% per month (Dkt. No. 148 at 8). Accordingly, the Court will award prejudgment interest on the amount of $42,540.83, from January 1, 2017, to be calculated at the rate of 2.15% per annum.

## IV. CONCLUSION

In conclusion, for the reasons discussed, the Court:

- **DENIES** EQT Production's Motion for Judgment as a Matter of Law, For New Trial, and For Amendment of the Court's Judgment Orders (Dkt. No. 149);

- **GRANTS in part** and **DENIES in part** the Richardses' Motion for Prejudgment Interest (Dkt. No. 147);

RICHARDS, ET UX., v. EQT PROD. CO.                          1:17CV50

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL, AND FOR AMENDMENT
OF THE COURT'S JUDGMENT ORDERS [DKT. NO. 149], GRANTING IN PART
AND DENYING IN PART PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST
[DKT. NO. 147], AND GRANTING DEFENDANT'S UNOPPOSED MOTION FOR
STAY OF EXECUTION ON JUDGMENTS FOR THIRTY DAYS [DKT. NO. 151]**

- **AWARDS** prejudgment interest on the Court's directed verdict at the rate of 2.15% per annum;

- **GRANTS** EQT Production's unopposed Motion for Stay of Execution of Judgments (Dkt. No. 151); and

- **STAYS** the execution of the judgments in the case for thirty (30) days following the entry of this Order.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record, and to enter an amended judgment order (Dkt. No. 137) reflecting the award of prejudgment interest.

DATED: August 29, 2019

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE